IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:18-MJ-1124-RJ

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ASHLEY LYNN ROWLAND,<br><br>Defendant. | ORDER |

This matter comes before the court to address Defendant's Motion to Suppress Based on Lack of Probable Cause. [DE-13]. The Government responded in opposition to Defendant's motion. [DE-18]. The undersigned held an evidentiary hearing on December 19, 2018. Accordingly, this matter is ripe for review. For the reasons stated below, Defendant's motion to suppress is allowed in part and denied in part.

## I. PROCEDURAL BACKGROUND

This case arises from Defendant's arrest on May 17, 2018 at Marine Corps Base, Camp Lejeune for driving while impaired ("DWI"). On May 21, 2018, the Government filed a criminal information charging Defendant with operating a motor vehicle upon a street, highway, or public vehicular area with an alcohol concentration of .08 or greater at a relevant time after driving, in violation of N.C. Gen. Stat. § 20-138.1, as assimilated by 18 U.S.C. § 13. At the suppression hearing, Defendant did not present any evidence. The Government presented the testimony of Officer Glenn P. McCaulley, ("Officer McCaulley"), a law enforcement officer with the Provost Marshal Office of Camp Lejeune.

## II. STATEMENT OF THE FACTS[1]

According to Officer McCaulley, in the early morning hours of May 17, 2018, Officer McCaulley was patrolling Camp Lejeune near the entrance to the Holcolm Gate ("Main Gate") in his patrol vehicle. At approximately 1 a.m., Officer McCaulley was approaching the Main Gate in his vehicle at the posted speed limit when he observed a vehicle pass his car. Officer McCaulley used his radar to determine the car was travelling 42 miles per hour in a 25 mile per hour zone. Officer McCaulley then saw the car make a sharp right turn without signaling, cross two lanes of traffic, and enter a parking area. The car stopped in a parking space with its back left tire in the grass median. Hr'g Testimony. Officer McCaulley initiated a traffic stop on the car which he identified was being driven by Defendant.

As he approached Defendant's car, Officer McCaulley noticed an odor of alcohol emanating from the vehicle. He saw that Defendant had watery and bloodshot eyes, slurred speech, and that she was wearing a paper wristband. Officer McCaulley knew that the wristband was from Gus's, a bar in the Jacksonville area. During the encounter, Defendant told Officer McCaulley that she was coming from Gus's, that she had had a fight with a friend who had abandoned her at the bar, and that she was attempting to get someone to pick her up because she did not want to drive to Raleigh. She also told Officer McCaulley that she should not be driving, although she did not elaborate further as to the reason she should not be driving. Officer McCaulley conducted several non-standardized field sobriety tests. First, he asked Defendant to recite the alphabet from E to P without singing. Defendant recited the entire alphabet from A to Z while singing. Hr'g Testimony. Second, Officer McCaulley asked Defendant to count down from sixty-seven to fifty-four. She stopped at sixty-three and did not complete the test. Hr'g Testimony. Third, Officer

---

[1] The facts were taken from both the briefing and the hearing testimony.

2

McCaulley asked Defendant to perform a finger dexterity test, which entailed touching her thumb to each finger forward and backward while counting three times. In performing this test, Defendant stopped during the first iteration, cursed, then did not complete the test. Hr'g Testimony. Officer McCaulley then asked Defendant to perform the standardized field sobriety tests. Defendant demonstrated six out of six clues on the Horizontal Gaze Nystagmus ("HGN") test and two out of four clues on the One Leg Stand ("OLS") test. The officer did not ask Defendant to perform the Walk and Turn test because she had a medical condition affecting her right ankle. Based on his observations, Officer McCaulley arrested Defendant for DWI.

### III. DISCUSSION

Defendant argues that the HGN test is unreliable and likely inadmissible absent expert testimony. *Id.* at 3–4. Defendant also argues that the arrest was not supported by probable cause because there was insufficient evidence of impairment. *Id.* at 4–5. Defendant thereby requests the court to suppress two items of evidence. First, Defendant asks the court to suppress the results of the HGN test because it is scientifically unreliable. *Id.* at 4–5. Second, Defendant asks the court to suppress evidence obtained after Defendant's arrest because the arrest was unsupported by probable cause. *Id.* at 3–4. The court agrees that the results of the HGN test are inadmissible at trial, but the court finds that the arrest was supported by probable cause, so the court declines to suppress evidence obtained after the arrest.

#### A. The results of the HGN test are inadmissible at trial.

Defendant argues that the HGN test is inadmissible because it is not scientifically reliable. Def. Mem. [DE-13] at 3. The HGN test is a scientific test, therefore the Government must present evidence of its reliability. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms*, 509 U.S. 579, 597 (1993); *United States v. Van Hazel*, 468 F. Supp. 2d 792, 798 (E.D.N.C. 2006) ("[A]ny testimony

3

regarding the HGN test would be scientific testimony which is subject to Federal Rule of Evidence 702 and the standards established in *Daubert*").

Here, Officer McCaulley testified that he performed the HGN test on Defendant and observed six clues, but the Government presented no evidence as to the reliability of the test. The testimony of Officer McCaulley is insufficient because he did not explain how the HGN test is scientifically reliable. *See Van Hazel*, 468 F. Supp. 2d at 797 (holding that the testimony of an officer who "certainly has expertise in the administration of the test and interpretation of the results" was insufficient to determine the scientific reliability of the HGN test); *United States v. Muleshe*, No. 5:15-MJ-1409-RN, 2016 WL 4742267, at *3 (E.D.N.C. Sept. 12, 2016) (holding that the officer's testimony was insufficient to establish reliability even though the officer had extensive law enforcement experience, was a DWI Enforcement Expert and certified Drug Recognition Expert, completed many specialized trainings, taught numerous courses on the history and science of field sobriety tests, and had read much literature on the HGN test). Like the officers in *Van Hazel* and *Muleshe*, Officer McCaulley is well versed in the administration of the HGN test, but his testimony does not establish the scientific reliability of the test. Accordingly, the results of the test are inadmissible at trial, and Defendant's motion to suppress the HGN test results is allowed.

### B. The arrest was supported by probable cause.

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. An arrest is a seizure of the person, and a warrantless arrest is only reasonable if it is supported by probable cause. *Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001). Probable cause exists if there are "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v.*

*DeFillippo*, 443 U.S. 31, 37 (1979). Probable cause is a practical, commonsense determination made in consideration of the totality of the circumstances. *Maryland v. Pringle*, 540 U.S. 366, 370–71 (2003).

The offense of DWI consists of three elements: (1) the defendant was driving a vehicle, (2) upon a street, highway, or public vehicular area, and (3) at a relevant time after driving, the defendant was under the influence of an impairing substance. N.C. Gen. Stat. § 20-138.1. Here, Officer McCaulley observed Defendant driving a vehicle upon a public street or highway. Accordingly, the first two elements are not contested. The remaining issue is whether there was probable cause to believe Defendant was impaired.

Defendant argued at the hearing that the court should not consider the HGN test in its probable cause determination because testimony on HGN will not be admissible at trial. The court disagrees. It may properly consider the HGN test in this preliminary hearing because the Rules of Evidence do not apply to preliminary hearings on the admissibility of evidence. Fed. R. Evid. 104(a); Fed. R. Evid. 1101(d)(1); *United States v. Matlock*, 415 U.S. 164, 173–74 (1974). Therefore, the court may consider testimony on the HGN test here regardless of whether it comports with Rule 702. The weight of the HGN test is another question; without evidence of the test's scientific reliability, it carries little weight. Nonetheless, the court may consider it.

The Government presented evidence of Defendant's poor driving, including speeding, a wide turn, and a slow turn; an odor of alcohol emanating from Defendant's car; Defendant's red, glassy eyes; Defendant's slurred speech; Defendant's admission that she was coming from a bar and should not be driving; Defendant's wrist band from the bar, indicating that she was at least twenty-one years old, the legal age at which one may consume alcohol; Defendant's poor performance on the nonstandard field sobriety tests; the six out of six clues on the HGN test; and

5

the two out of four clues on the OLS test. That evidence is sufficient to warrant a prudent officer in believing that Defendant was impaired. *See Williams v. Wells*, No. 5:14-HC-2047-FL, 2015 WL 4478716 at *4 (E.D.N.C. July 22, 2015) (holding that there was probable cause to arrest the defendant when an officer observed a "strong odor of alcohol, slurred speech, [and] bloodshot eyes," and the defendant was "extremely unsteady on his feet" (quoting *State v. Williams*, 738 S.E.2d 211, 214 (N.C. Ct. App. 2013))); *Moore v. Cease*, No. 703-CV-144-FL, 2005 WL 5322794, at *9–11 (E.D.N.C. July 5, 2005) (holding that there was probable cause to arrest the defendant when officers received a tip from an informant that the defendant had been drinking; the defendant displayed poor driving, including making a wide turn; the defendant behaved oddly at the traffic stop, putting her hands in the air and saying, "don't shoot;" and the defendant performed poorly on the Walk and Turn test and the finger dexterity test); *State v. Lindsey*, 791 S.E.2d 496, 501 (N.C. Ct. App. 2016) (holding that there was probable cause to arrest the defendant when there was an odor of alcohol coming from the Defendant, Defendant had red and glassy eyes, the officer observed six out of six HGN clues, and the Defendant admitted drinking).

The Government has presented sufficient evidence showing that there was probable cause to arrest Defendant for DWI. Accordingly, Defendant's motion to suppress evidence obtained after her arrest is denied.

### III. CONCLUSION

For the reasons stated herein, it is ORDERED that the Defendant's motion to suppress [DE-13] be ALLOWED in part and DENIED in part.

So ordered, the 19th day of December, 2018.

Robert B. Jones, Jr.
United States Magistrate Judge

6